# STATE OF MICHIGAN

# COURT OF APPEALS

CLINTON TOWNSHIP VOLUNTEERS OF
AMERICA ELDERLY HOUSING, INC.,

UNPUBLISHED
March 1, 2016

Petitioner-Appellant,

v

No. 324927
Tax Tribunal
LC No. 00-449250

CLINTON TOWNSHIP,

Respondent-Appellee.

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

In this dispute over the application of a tax exemption for real property, petitioner, Clinton Township Volunteers of American Elderly Housing, Inc. (Volunteers of America), appeals by right the Tax Tribunal's opinion and judgment dismissing its petition for a refund of real property taxes assessed by respondent, Clinton Township. For the reasons more fully explained below, we reverse the Tribunal's judgment and remand for further proceedings.

## I. BASIC FACTS

Volunteers of America owns and operates a non-profit housing development for elderly persons in Clinton Township that is known as Partridge Creek Senior Village. Clinton Township issued a variance to allow the construction of Partridge Creek. The variance provided that it was contingent on several conditions, including a requirement that "property taxes for the subject site will be paid, and neither the current owner nor any future owners are to apply for a 'PILOT' for this development." A 'Pilot' is a program that provides for payments in lieu of taxes. The first tenant moved into Partridge Creek in March 2012. In that same month, Volunteers of America applied to Clinton Township for a tax exemption on the property under MCL 211.7d.

Ulrike Raak testified that she was formerly Volunteers of America's chief financial officer. She prepared the original application for the exemption for elderly housing and had it submitted, but she never received a written approval or denial from Clinton Township. After she submitted the application, James Elrod from Clinton Township contacted her by phone and said he was unable to approve the application at the time; Raak stated that he did not, however, tell her she had to resubmit the application.

-1-

Elrod testified that he is an assessor for Clinton Township. He said he called Raak after he received her application and explained to her that he could not approve it for the 2012 tax year because he did not receive the application before December 31, 2011. He also stated that, because the exemption freezes the assessed value, the application could not be accepted until the property is fully assessed, and the development could not be fully assessed because it was still incomplete. He informed her that he needed a completed application sometime in the Fall if she wanted the exemption to apply for 2013. Finally, he informed her that Volunteers of America waived its right to seek a Pilot. Elrod testified that he did not submit a written response to the application because it was untimely.

Karlynne Tucker-Saggs testified that she is the vice president of housing for Volunteers of America. She stated that she attended the planning commission's meetings concerning the development and she did not come away with the impression that Volunteers of America would never be able to apply for a Pilot exemption. She told the township's officials that they would be seeking a Pilot exemption with the State Treasurer that would result in payments "equal to the property taxes based on the assessed value." Tucker-Saggs explained that the Pilot under the state's program is not like a traditional Pilot:

> Well, a pilot in the affordable housing industry . . . is when even prior to development you have to have an agreement with the city or township that they will accept a pilot, which is payment in lieu of taxes. And it's usually based on a formula having to do with the gross rent and the utility costs. And it is significantly lower than what the normal property taxes would be. And that is really when cities want to cooperate with non-profits or organizations to provide affordable housing for its low income residents.

The payment under the state program, she said, more closely mirrors the actual property taxes over the next 15 to 30-year period, but is paid by the State Treasurer on the exempt taxpayer's behalf.

In December 2012, Volunteers of America petitioned the Tribunal for relief from taxation by Clinton Township for the 2012 tax year. It alleged that Clinton Township had not issued a written approval or denial of its application for a tax exemption under MCL 211.7d, as required, and that it had to petition the Tribunal in order to preserve its rights. It asked the Tribunal to determine that it was qualified for the exemption and order Clinton Township to remove Volunteers of America from its tax rolls and refund the overpayment of taxes for tax year 2012.

In response, Clinton Township—in relevant part—took the position that Volunteers of America was not entitled to the exemption for tax year 2012 because it was not in operation prior to the start of the tax year. It also maintained that Volunteers of America was not eligible for the Pilot program under the terms of the variance for the original construction of Partridge Creek.

In March 2013, Volunteers of America requested leave to amend its petition to include the 2013 tax year. The Tribunal granted the motion in May 2013.

The parties stipulated that Clinton Township ultimately approved the exemption in July 2014. However, by that time the application was untimely for the 2013 and 2014 tax years and the Department of Treasury (the Department) denied the request. The Department indicated that Volunteers of America could be eligible for participation in the Pilot program for the 2015 tax year with additional submissions.

The tribunal held a hearing on Volunteer of America's petition in October 2014. After the close of proofs, Volunteers of America withdrew its request to have the Tribunal review whether it qualified for an exemption in 2012. Its lawyer also agreed that Volunteers of America did not file a new application to get an exemption for 2013. Rather, its lawyer maintained that the application in 2012 could have been applied to 2013.

The Tribunal issued its final opinion and judgment in November 2014. The Tribunal noted that it only had jurisdiction to consider a petition to review a final decision, ruling, or determination. It then stated that there was no final decision, ruling, or determination on the exemption at the time Volunteers of America filed its petition. The Tribunal did not, however, dismiss the petition for lack of jurisdiction. Rather, it examined the statute governing the exemption, MCL 211.7d, and recognized that the statute did not provide a deadline for an application; it merely provided a start date for the exemption. The Tribunal determined that Volunteers of America was not entitled to an exemption in tax years 2012, 2013, and 2014, because the exemption does not apply until December 31 of the year that the exemption is approved and there was no approval in 2012 or 2013. Clinton Township did approve the application in early 2014, which would then allow for an exemption beginning December 31, 2014, but the Department denied that application. For these reasons, the Tribunal dismissed the appeal as to the 2012, 2013, and 2014 tax years. The Tribunal agreed that there was a final decision that could be appealed for the 2015 tax year, but it severed that tax year and assigned it a new docket number because the Department issued the final decision and it was not a party to the appeal.

Volunteers of America now appeals in this Court.

## II. THE TRIBUNAL'S DECISION

### A. STANDARDS OF REVIEW

On appeal, Volunteers of America argues that the Tribunal erred when it refused to grant it any relief. "Our review of the Tax Tribunal's decisions is limited. In the absence of fraud, we review a Tax Tribunal decision for a misapplication of the law or the adoption of a wrong principle." *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 112; 845 NW2d 81 (2014). We review the Tribunal's factual findings to determine whether they were supported by competent, material and substantial evidence on the whole record. *Id.* This Court reviews de novo whether the Tribunal correctly selected, interpreted, and applied the relevant statutes to the facts. *New Products Corp v Harbor Shores BHBT Land Dev, LLC*, 308 Mich App 638, 644; 866 NW2d 850 (2014). "Since exemption is the antithesis of tax equality, exemption statutes are to be strictly construed in favor of the taxing unit." *Mich Baptist Homes & Dev Co v City of Ann Arbor*, 396 Mich 660, 670; 242 NW2d 749 (1976).

## B. ANALYSIS

Clinton Township did not formally deny the application by Volunteers of America; it took no formal action until it approved the exemption in 2014. Volunteers of America argues that Clinton Township's failure to timely comply with the requirements of MCL 211.7d deprived it of the exemption for tax years 2013 and 2014, and that its failure to timely act should constitute a de facto denial.

The Tribunal "has exclusive and original jurisdiction over," in relevant part, "[a] proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under the property tax laws of this state." MCL 205.731(a). The Tribunal's jurisdiction includes a proceeding to review an agency's final decision concerning an exemption from taxation. See *Nicholson v Birmingham Bd of Review*, 191 Mich App 237, 241-242; 477 NW2d 492 (1991).

In this case, Volunteers of America asked for a refund of property taxes that it paid, but it premised its right to a refund on Clinton Township's failure to approve its application for an exemption under MCL 211.7d. At the hearing on its petition, the lawyer for Volunteers of America specifically disavowed that it was asking the Tribunal to consider the valuation of the property; instead, she agreed that the sole issue for the Tribunal was whether Volunteers of America was entitled to an exemption for tax years 2013 and 2014 under MCL 211.7d. The Tribunal recognized that Volunteers of America's argument amounted to a challenge to Clinton Township's final decision, if any, on the application for an exemption for those years. Whether the Tribunal correctly determined that it did not have jurisdiction to consider the claims by Volunteers of America depended on whether there was "a final decision, finding, ruling, determination, or order of an agency" capable of direct review. MCL 205.731(a); see also *Hillsdale County Sr Services, Inc v Hillsdale County*, 494 Mich 46, 53; 832 NW2d 728 (2013) (stating that the Tribunal has jurisdiction under MCL 205.731(a) only if there is a proceeding for direct review of a final decision, finding, ruling, determination, or order).

Real property is exempt from taxation if it constitutes "[h]ousing owned and operated by a nonprofit corporation or association, by a limited dividend housing corporation, or by this state, a political subdivision of this state, or an instrumentality of this state, for occupancy or use solely by elderly or disabled families . . . ." MCL 211.7d(1). It is undisputed that Volunteers of America is a qualifying nonprofit corporation and that Partridge Creek Senior Living is dedicated for occupancy or use solely by elderly persons. See MCL 211.7d(9)(c) (defining elderly person), and (g) (defining nonprofit corporation or association to mean a nonprofit corporation or association operating a housing facility or project qualified, built, or financed under certain specified federal laws). Accordingly, it would appear that the development qualified for the exemption if it "owned and operated" the development for the required purpose during the relevant tax year. See MCL 211.7d(1). However, the Legislature provided that the owner of a qualified property "may claim an exemption under this section on a form prescribed by the department of treasury." MCL 211.7d(2). If the owner claims the exemption, the "assessor of the local tax collecting unit in which the property is located shall approve or disapprove" the claim and "notify the owner and the department of treasury in writing of the exemption's approval or disapproval." MCL 211.7d(2). After the local assessor approves or

disapproves the claim, the Department still "may deny an exemption under this section." MCL 211.7d(2).

When the statutory scheme is read as a whole, it is evident that the exemption does not apply unless the property owner claims the right to the exemption and the local assessor and the Department both approve the claim. MCL 211.7d(2). Thus, the local assessor has the authority to examine the claim and approve or deny it. Even if the local assessor and the Department approve the exemption, it does not apply to the property until the start of the next year: "An exemption under this section begins on December 31 of the year in which the exemption is approved under this subsection and shall continue until the property is no longer used for occupancy or use solely by elderly or disabled families." MCL 211.7d(2). Notably, the Legislature did not provide a timeline within which the local assessor or the Department must act to approve or deny the application and did not provide for cases, such as this one, where the local assessor does not deny or approve the claim in writing for a lengthy period of time. The only requirement is that the local assessor must eventually approve or deny the claim and notify the owner and the Department of its decision in writing. MCL 211.7d(2).

Volunteers of America also correctly observes that the Legislature did not provide that a taxpayer must renew his or her application every year. Rather, the statute merely requires the taxpayer to submit a claim for the exemption and requires the local assessor to approve or deny the claim in writing.

The better practice in this case would have been for Clinton Township to formally deny the original March 2012 application for the reasons that it later stated in defense to this petition. In that case, Volunteers of America would have been on notice of the denial and could have sought proper review. Similarly, once it became evident that Clinton Township was not going to approve or deny the application for the exemption, Volunteers of America could have sued for a writ of mandamus to compel the local assessor to either approve or deny the exemption. See *Hillsdale County Sr Services*, 494 Mich at 53 (discussing the writ of mandamus in the tax context and holding that the Tax Tribunal has the authority to issue the writ when it concerns a matter within its jurisdiction); *Hayes v Parole Bd*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 321547), slip op at 4 (stating that a writ of mandamus may be used to compel an agency to comply with its duty to exercise its discretion, even though it may not be used to compel a specific result). Unfortunately, Clinton Township did not take formal action and Volunteers of America did not seek a writ to compel Clinton Township to do so.

On this record, it appears that the Tribunal did not have jurisdiction to consider Volunteers of America's petition concerning the 2012 tax year. Volunteers of America petitioned the Tribunal for review of Clinton Township's decision in December 2012. At that time, Clinton Township had neither approved nor denied Volunteers of America's application for an exemption in writing and, even if it had, the exemption would not have taken effect under MCL 211.7d(2) until December 31 of that year. There was, as such, no final decision to review and the tax year for which the exemption could apply had not yet started; consequently, the Tribunal correctly concluded that it did not have jurisdiction to review the application for the exemption in 2012. However, the Tribunal allowed Volunteers of America to amend its petition in 2013 to include a claim that it was entitled to an exemption in 2013 under the same

application. Therefore, the Tribunal had jurisdiction to consider Clinton Township's final decision, if any, to deny the application as it applied to the 2013 tax year.

Although the Tribunal suggested that it did not have jurisdiction of the claims involving 2013 and 2014, it did not explicitly rely on that when it dismissed the petition. Instead, the Tribunal apparently considered the merits of Volunteers of America's claim that it was entitled to an exemption in 2013 and 2014. The Tribunal recognized that Clinton Township could have approved the application in 2012, which might then have applied to the 2013 tax year, or it could have approved the application in 2013, which might then have applied to the 2014 tax year. But it determined that Volunteers of America was not entitled to the exemption in either year because the undisputed evidence showed that Clinton Township's assessor did not approve the application until 2014; because MCL 211.7d(2) provides that the exemption will not start until December 31 of the year in which the claim for an exemption is approved, the Tribunal determined that Volunteers of America failed to establish its right to the exemption in either 2013 or 2014.

The Tribunal correctly determined that the exemption provided under MCL 211.7d(1) does not apply until the taxpayer claims the exemption and the local assessor and Department approve the claim. See MCL 211.7d(2). That does not, however, mean that the Tribunal cannot review a decision until the taxpayer obtains approval. The Tribunal clearly has jurisdiction to consider whether the local assessor or Department wrongfully denied a claim for an exemption under MCL 211.7d(1). The question is whether the Tribunal correctly determined that a local assessor's decision to take no formal action—that is, his or her failure to issue a written approval or denial—on an application before the expiration of the calendar year in which the application was made is itself unreviewable.

An approval or denial of a tax exemption under MCL 211.7d is not a final decision unless the decision complies with the requirements of MCL 211.7d(2). As such, the Tribunal did not err when it determined that Clinton Township did not approve or deny the application in 2012 or 2013. Nevertheless, if the local assessor does not take action on an application within the calendar year in which it is made, the taxpayer will automatically lose the benefit of the exemption for the next year, because any approval after December 31 will not come into effect until the following December 31. See MCL 211.7d(2). Hence, the failure to timely act on an application has the effect of a denial after December 31 of the year in which the application is made—at least for the pending tax year.

The Tribunal erred as a matter of law when it concluded that it could not review whether Clinton Township wrongfully denied Volunteers of America's application for an exemption. Clinton Township's failure to take any action on the application in 2012 amounted to a final decision denying the application with regard to tax year 2013, which the Tribunal had jurisdiction to review. The Tribunal also had jurisdiction to consider Clinton Township's failure to take any action within 2013, which in turn amounted to a denial of the exemption for 2014. Consequently, we reverse the Tribunal's opinion and judgment, and remand for further proceedings to consider whether Volunteers of America established that it was entitled to the exemption in 2013 and 2014. See *Elias Brothers Restaurants, Inc v Dept of Treasury*, 452 Mich 144, 150; 549 NW2d 837 (1996). On remand, the Tribunal shall determine whether Clinton Township's de facto denial in 2012 was unlawful and, if it was not, whether its de facto denial in

2013 was unlawful. If Clinton Township's failure to earlier approve the exemption was unlawful, the Tribunal has the authority to order Clinton Township to approve the exemption and backdate the exemption to the year in which it should have been made. In that case, Volunteers of America will be entitled to a refund of the taxes unlawfully levied against its property.

## III. MCL 211.119

Volunteers of America also argues that the Tribunal erred when it failed to apply MCL 211.119(1) and order Clinton Township to compensate Volunteers of America for the damages it sustained as a result of the township's failure to perform its duty under MCL 211.7d(2). That statute make it a misdemeanor criminal offense for a "person" to willfully neglect or refuse to perform a duty required under the tax code:

> [A] person who wilfully neglects or refuses to perform a duty imposed upon that person by this act, when no other provision is made in this act, is guilty of a misdemeanor, punishable by imprisonment for not more than 6 months, or a fine of not more than $300.00, and is liable to a person injured to the full extent of the injury sustained. [MCL 211.119(1).]

This statutory provision has existed in one form or another since it was first enacted in 1893. See 1893 PA 206; 1897 CL 3942. There are very few authorities construing this statute, but it appears that it applies to individuals, not local governments. See, e.g., *Turner v Muskegon Circuit Judge*, 95 Mich 1, 4; 54 NW 705 (1893) (examining the application of the predecessor version of this statute to an assessor and stating that the application will depend on the facts specific to each case and whether there was a showing of good faith by the assessor). In any event, the statute clearly is a criminal provision that makes a person convicted under the statute liable for "the injury sustained" as a result of the willful neglect or refusal. MCL 211.119(1). The Tax Tribunal does not have jurisdiction to try criminal cases. See MCL 205.731. Jurisdiction over criminal cases generally lies with Michigan's circuit courts. See MCL 767.1. Therefore, the Tribunal did not err when it failed to apply MCL 211.119(1).

## IV. CONCLUSION

The Tribunal erred to the extent that it determined that Volunteers of America could not challenge Clinton Township's failure to earlier approve or deny Volunteers of America's application for an exemption under MCL 211.7d. A local assessor's failure to approve or deny an application for an exemption under MCL 211.7d in the same year that it is made constitutes a de facto denial of the exemption for the following tax year, which decision the Tribunal may review as a final decision. Accordingly, we reverse the Tribunal and remand this case for further proceedings. On remand, the Tribunal shall determine whether Clinton Township's failure to take action on Volunteers of America's application in 2012 and 2013 amounted to an unlawful denial of the exemption. The Tribunal does not, however, have jurisdiction to consider criminal charges or order restitution under MCL 211.119. For that reason, the Tribunal should enter an order dismissing any claim under MCL 211.119 for lack of jurisdiction.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly